No. 7326.   Decided October 16, 1908.]

JOSEPH BOUCHER, *Respondent,* v. OREGON RAILROAD & NAVIGATION COMPANY, *Appellant.*[1]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—OPERATION OF TRAINS—FAILURE TO OBSERVE RULES. Where a freight train was overtaken and run into by another train, the conductor of the first train is guilty of contributory negligence, precluding any recovery for injuries sustained in the collision, where it appears conclusively that his train was delayed, that he failed to observe the rules of the company for the protection of his train under the circumstances of the case, either in spirit or letter, and that had he done so the accident would not have occurred.

APPEAL AND ERROR—REVIEW—VERDICT. The verdict of a jury is not binding on questions of fact where it is not consistent with the special findings and such findings are not consistent with themselves.

SAME—SPECIAL FINDINGS—CONSISTENCY—MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—OPERATION OF TRAINS. In an action by a conductor for injuries sustained in a rear end collision, a special finding of the jury that his train was delayed in the run from W. to R. under circumstances which should have caused him to appre-

[1] Reported in 97 Pac. 661.

hend that it might have been overtaken by another train, is inconsistent with a special finding that the speed of the train was not so reduced running up grade from S. to k. as to endanger his train and the circumstances were not such "during any part of this run between such points" as should have caused him to take certain precautions, the same being prescribed by the rules of the company under the circumstances found by the first special finding; and a general verdict inconsistent with the first finding will not be sustained when contrary to the undisputed testimony as to the conductor's negligence in not observing the precautionary rules.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered November 30, 1907, upon the verdict of a jury rendered in favor of the plaintiff, for injuries sustained by a railroad conductor in a rear end collision. Reversed.

*W. W. Cotton, S. R. Stern, A. C. Spencer,* and *Ralph E. Moody,* for appellant.

*Geo. A. Latimer* and *A. M. Winston,* for respondent.

Dunbar, J.—On the 11th day of December, 1906, while the plaintiff was in the employ of the defendant railroad company as freight conductor, he left Wallula with a loaded freight train, westbound for Umatilla, in the state of Oregon. Proceeding westbound, he encountered a stiff upgrade a few . miles east of the station known as Riverview. His train was known as No. 21, and was due in Umatilla at 3:05 p. m. Extra tonnage on this route was handled by an extra train, which was operated in connection with No. 21, and known as No. 131. Defendant in this action William Davidson was conductor on said extra train No. 131, and defendant M. C. Wade was the engineer on said train. As No. 21 was approaching the whistling post east of the station Riverview, its rear end was run into by No. 131, and as a result of said collision the plaintiff sustained the injuries for which he has sued.

Defendant Wade did not appear in the court below, and was dismissed out of the action by plaintiff's attorneys, and

at the conclusion of plaintiff's case, a nonsuit was granted
as to the defendant Davidson, the action having been original-
ly brought against the Oregon Railroad & Navigation Com-
pany and Wade and Davidson. The complaint in substance
alleged negligence on the part of the defendant railroad com-
pany in not furnishing a safe place and keeping a safe place
for the plaintiff to operate his train in. The answer denied
negligence on the part of the railroad company, alleged the
promulgation of rules to govern conductors in the operation
of their trains under such circumstances as it alleged to exist
in this case, and alleged contributory negligence on the part of
the plaintiff in not observing such rules, and that the failure
to observe such rules was the cause of the accident. Verdict
was rendered for the plaintiff in the sum of $5,000, and judg-
ment entered, from which judgment this appeal is taken.

The respondent objects to the hearing of the case upon its
merits for several technical reasons, but we think under the
law and decisions of this court the cause is here for its deci-
sion upon the merits. Many assignments of error are made by
the appellant, but as we view the true merits of this case,
their discussion is unnecessary, for it appears without any
reasonable doubt that the accident occurred by reason of the
failure of the conductor to observe the rules which had been
furnished him for his guidance. Rule 99 is to the effect that:

"When a train stops or is delayed under circumstances in
which it may be overtaken by another train, the flagman must
go back immediately with stop signals; at a point one-fourth
of a mile (nine telegraph poles) from the rear of his train
he must place one torpedo on the rail, then continue to go
back at least one-half mile from the rear of his train and
place two torpedoes on the rail, two rail lengths apart, when
he may return to a point one-fourth of a mile from the rear
of his train and must remain there until relieved or recalled
by the whistle of his engine. When he returns to his train
he will remove the single torpedo. Should the speed of the
train be reduced and its rear thereby endangered, making it
necessary to check the following train before a flagman can

get off, a lighted red fuse shall be thrown on the track at intervals to secure the absolute safety of the leading train. By night or when the view is obstructed by fog or otherwise, flagmen must place a lighted red fuse on the track to assist in protecting his train, while returning.

"106.   In all cases of doubt or uncertainty the safe course must be taken and no risks run.

"901.   The general direction and government of a train is vested in the conductor. He is responsible for its safe and proper conduct, and all men employed on the train will obey his instructions. . . . Be vigilant and cautious, not trusting alone to signals for rules for safety. Will obey the instructions of yardmaster within yard limits, and be governed by the directions of agents in doing work at stations.

"905.   Conductors must not allow other duties to interfere with the proper protection of their train, and invariably require their flagmen to act with the utmost promptness and in strict accordance with the rules.

"909.   When compelled for any reason to move at an unusually slow speed, or to stop on the main track, conductors must take immediate action to secure the safety of their own train and trains approaching. Constantly keep in mind that nothing will justify a collision between trains, and that the prompt use of signals according to the rules will prevent it."

There are other rules which were introduced in evidence, used for the protection of trains, but sufficient has already been set forth. The evidence shows and the jury found that the caboose, which was attached to the rear end of the train, was not within the yard limits at the time of the collision. The evidence also shows conclusively that the train was delayed. In fact, this is shown by the time of the accident and the time when the train was due at Riverview. While it is true the conductor in an evasive way testified that he had complied with a portion of the rules, it conclusively appears from his own testimony that he did not comply with the rules, either in spirit or in letter, and it as conclusively appears that, if he had complied with the rules, the accident would not and could not have occurred.

While as a rule this court will be bound by the verdict of a jury on questions of fact, but where the verdict is not consistent with the special findings and the special findings are not consistent with themselves, this rule will not prevail. The jury in answer to special interrogatory No. 1, which was as follows: "Was train No. 21 delayed in her run from Wallula to Riverview under circumstances which should have caused conductor Boucher to apprehend that it might have been overtaken by another train?" answered: "Yes." Special interrogatory No. 2 was: "Was the speed of train 21 so reduced running up grade from Sand Spur to Riverview as to endanger train 21, and were the circumstances such during any part of this run between such points as should have caused Boucher in the exercise of due care to have thrown lighted fuses at intervals on the track or thrown torpedoes to protect the rear of his train?" and the answer was: "No." This is in reality not a finding of fact, but it is a conclusion which the jury had no right to draw from the preceding finding that the train was delayed under circumstances which should have caused the conductor to apprehend that it might have been overtaken by another train. These are the circumstances under which the rule prescribes that the conductor should throw out lighted fuses at intervals on the track, and throw out torpedoes to protect the rear of his train; and when the jury answered that these conditions existed, they could not consistently say that the circumstances were such as to relieve the conductor of the duty prescribed by the rules. As the general verdict must have been based upon the answer to interrogatory No. 2, the general verdict is inconsistent with the answer to interrogatory No. 1; and the jury having found that the rear end of the train or the caboose was not within the whistling post, and therefore was in a position which should have been protected under the rules, not having been within the yard limits, their general verdict was doubly inconsistent; and the testimony, not only for the defense but for the plaintiff, shows that the jury was war-

ranted in answering interrogatory No. 1 as it did answer it, and that the train was delayed under such circumstances as should have caused the conductor to apprehend that it might have been overtaken by another train.

Courts are jealous of the rights of passengers, and of the servants of railroad companies who are subject to the orders, and under the absolute control, of the railroad company or its vice principals. But a different rule prevails when damages are sought from the company by a servant who is in control for the company. A conductor is an important factor in the operation of a train, and if the accident happens through mismanagement so far as the operation is concerned, or through neglect of orders, it would be unjust to hold the principal responsible and allow the servant to recover damages which were the result of his own negligent acts. When the master has promulgated a rule, which if followed would protect the conductor in the exercise of his duties and which would have prevented the accident, it would be rank injustice to allow the conductor to escape the consequences of his own negligence and shift the responsibility upon the master. The undisputed evidence in this case so plainly and undeniably shows the negligence of the conductor in failing in letter and in spirit to obey the rules which were made for his guidance, that he cannot recover under any authority.

The judgment will therefore be reversed, with instructions to dismiss the action.

HADLEY, C. J., ROOT, MOUNT, and CROW, JJ., concur.
RUDKIN and FULLERTON, JJ., took no part.